IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA


LEAH ZAMORA,                           No. Civ. S-05-00789 DFL KJM

   Plaintiff,               Memorandum of Opinion
               and Order
  v.

SACRAMENTO RENDERING COMPANY;
LOTHAR LEHMANN; MICHAEL PATRICK
KOEWLER,

   Defendants.            /


  Plaintiff Leah Zamora brings this action against her former employer, Sacramento Rendering Company ("SRC"), her former supervisor, Lothar Lehmann, and SRC's CEO, Michael Patrick Koewler.  She alleges sexual harassment, assault, battery, wrongful discharge, and various other mostly duplicative claims. Defendants seek summary judgment.  The motion will be GRANTED in part and DENIED in part.

1

## I. Facts

SRC is a rendering company that processes animal carcasses into meal for products such as dog food and livestock feed. The company uses large volumes of water and, therefore, is required to have an on-site treatment facility.

Zamora started work as an assistant plant manager and safety director at SRC on September 11, 2003. During the period of time covered by the complaint, Lehmann was the plant manager and Zamora's supervisor. Zamora alleges that during the first few months of her employment, Lehmann began staring at her breasts, standing too close, and brushing up against her, all of which made her uncomfortable. Over time, she alleges, Lehmann started touching her in even more inappropriate ways, including at least once stroking her face, touching her body through a slit in her overalls, and grinding against her crotch. She alleges that on one occasion Lehmann tried to kiss her while the two were alone in a trailer, then put his arm across the doorway as if to block her exit. She also alleges that Lehman made inappropriate sexual comments, including asking how much it would cost for a kiss or "something more," stating that he could impregnate her despite his being sixty-eight years old, and asking to see her breast. Zamora claims that she asked Lehmann to stop harassing her, but that she did not report him for some time because she feared losing her job.

Meanwhile, Zamora alleges, SRC was underreporting its wastewater flow to the California Regional Water Quality Control Board ("Water Board").  She claims that when she became aware of these alleged violations she expressed her concerns to Lehmann, who told her that "this is why we have insurance."

On about June 28, 2004, Zamora told Amalia Ramirez, an SRC employee with human resources responsibilities, about Lehmann's alleged harassment.  Ramirez informed Richard Wilbur, SRC's Controller.  Wilbur spoke with Zamora, asked her to put her complaints in writing, and told her that he would seek advice from SRC's counsel.  Wilbur also informed SRC's CEO, Patrick Koewler, of Zamora's complaints.

Zamora alleges that instead of launching an immediate investigation, Koewler went on vacation for the first few weeks of July 2004.  However, she does not dispute Koewler's claim that he interviewed Lehmann on July 1, showed him Zamora's complaint (the contents of which Lehmann denied), and told him not to take any retaliatory action against Zamora.  Koewler also moved Zamora's workspace out of the office she had shared with Lehmann, although Lehmann continued to supervise her work.

On September 27, 2004, Koewler informed Zamora that Lehmann denied her allegations and that the investigation had not revealed any witnesses who corroborated her charges.  SRC's attorney then asked Zamora to sign a statement that she was

satisfied with SRC's response to her complaints.  Zamora signed it, she claims, because she feared she would be fired if she did not.

Koewler then informed Zamora that she would no longer receive overtime hours because the plant's expansion project had been completed.  According to Zamora she protested against this change, asserting that ample overtime had been part of her initial employment agreement.  She asserts that this action was retaliatory because much of the overtime she had worked until that point in time had not involved the expansion project.

Koewler also told her that he was instituting a schedule under which Lehmann and Zamora would meet each day at 7:00 a.m. and 2:00 p.m.  Zamora claims she expressed her unhappiness with this arrangement, but that Koewler ignored her concerns.

Over the next several days, Zamora claims, Lehmann continued to stare at her breasts and make her feel uncomfortable.  As a result, she demanded that Koewler transfer Lehmann out of her presence.  Zamora claims that SRC management refused her request and began treating her with hostility.

On November 4th, after allegedly hearing Lehmann make an off-color comment, Zamora went to speak with Koewler in his office.  But instead of addressing her complaints, Zamora alleges, Koewler began angrily interrogating her about reports she had made to the Water Board concerning SRC's wastewater

output.[1]   Zamora claims Koewler rose to his feet, slammed a file down onto his desk, and stepped towards her aggressively while pointing his finger at her.   At the time, Zamora was three to four feet away from Koewler, and a desk stood between them. Zamora left Koewler's office in tears.   She now alleges that she was afraid for her physical safety.

Zamora then informed SRC that although she would not resign, she could not return to work unless SRC made arrangements to keep both Koewler and Lehmann away from her. SRC proposed moving Zamora to a different work shift, allowing her to report to Ramirez, and ensuring that she would never again be alone with Lehmann.   Zamora claims that she refused this proposed shift change because it would have conflicted with her childcare responsibilities, entailed a reduction in responsibility, and would have failed adequately to protect her from further harassment.   She never returned to work at SRC.

Zamora filed this action on April 21, 2005.   Defendants filed this motion for summary judgment on August 9, 2006.

---

[1] The validity of Zamora's charge to the Water Board is not at issue in this litigation.   Zamora does not contend that there was actually a violation, only that she reasonably believed that there was and acted appropriately in making a report to the Water Board.   SRC denies ever having made false wastewater reports.   According to SRC, Zamora misinterpreted adjustments made to correct for the effects of rainwater.   SRC states that the district attorney's office has cleared it of any wrongdoing.

## II.   Claims 1 & 2: Hostile Work Environment

Zamora brings claims for hostile work environment due to sexual harassment under both Title VII and FEHA.  Both statutes prohibit an employer from creating or permitting a work environment in which the conditions are such as to discriminate against employees on the basis of their gender.[2]

To establish a prima facie case of sexual harassment under either Title VII or FEHA, an employee must prove "(1) that [she] was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Pavon v. Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999); Meritor Sav. Bank FSB, 477 U.S. at 67; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998); see also Lyle v. Warner Bros. Television Prod., 38 Cal. 4th 264 (2006)(noting that standards for hostile work environment sexual harassment claims under FEHA are identical to

--------

[2] Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. 2000e-2(a)(1)).  Similarly, under FEHA, it is unlawful for an employer "because of the . . . sex . . . of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment . . . or harass an employee."  Cal. Gov. Code § 12940(a), (j)(1).

those under Title VII).  The "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citation omitted).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Id. at 788 (internal citation omitted).

Defendants argue that Lehmann's alleged harassing acts were "vague, sporadic, isolated and trivial," and therefore insufficiently severe or pervasive to create a hostile work environment.  They cite a number of cases in which federal and California courts have found workplace conduct to be insufficiently severe or pervasive to create a hostile work environment.  None of these cases, however, involved conduct as severe and pervasive as that which Zamora alleges here.  For instance, in Kortan v. Calif. Youth Auth., the Ninth Circuit held that a supervisor's largely isolated flurry of misogynistic comments was insufficient to create an objectively hostile work environment.  217 F.3d 1104, 1108-10 (9th Cir. 2000).  In so holding, the court emphasized that the defendant's comments were made mainly on a single day and were not directed at the plaintiff.  Id. at 1110.  In contrast, Zamora alleges that

Lehmann consistently engaged in sexual misconduct aimed directly

at her for nearly two years.  Moreover, Lehmann's alleged

misconduct includes highly inappropriate physical touching,

something which was not alleged in Kortan.

Defendants also cite Manatt v. Bank of America, where the

Ninth Circuit held that a few racially insensitive "offhand

comments" and incidents of "simple teasing" spread over two-and-

a-half years did not alter the conditions of plaintiff's

employment.  339 F.3d 792, 799 (2003).  But as with Kortan,

Manatt does not help SRC because Zamora alleges much more severe

and frequent incidents of harassment.

Lehmann's alleged misconduct was repeated,[3] unwelcome,[4]

spanned a significant period of time, and indicated a sexual

_____

[3] Defendants contend that in her deposition Zamora
identified "only" six incidents in which Lehmann touched her
inappropriately, and that only in her subsequent declaration did
she claim that Lehmann touched her inappropriately at least once
a week from November 2003 through March or April 2004.  Citing
Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999),
defendants argue that Zamora cannot create an issue of material
fact by submitting a declaration that contradicts her deposition
testimony.  But defendants have not pointed to anything in
Zamora's deposition indicating that there were no more than six
touching incidents.  That she may have identified six incidents
is not necessarily an admission that there were not more.  More
important, even if there were "only" six incidents of touching,
a reasonable jury could find that Lehman's alleged conduct
created a hostile work environment.

[4] Defendants contend that Zamora welcomed Lehmann's alleged
harassment because she admits sharing personal information with
Lehmann, loaning him a copy of "American Pie," sending an e-mail

interest in Zamora.  As such, a reasonable jury could find that Lehman's conduct created a hostile work environment.

In the alternative, SRC claims a complete defense to a sexual harassment claim under <u>Farragher v. City of Boca Raton.</u> <u>In Farragher</u> the Court held that as long as no "tangible employment action" has been taken against the plaintiff, an employer has an affirmative defense where (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) . . . the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  524 U.S. 775, 807-08 (1998).  This defense is available under both Title VII and FEHA.  <u>Kohler v. Inter-Tel Tech.</u>, 244 F3d 1167, 1176 (9th Cir. 2001).

Defendants assert that Zamora suffered no "tangible employment action," which the Supreme Court has defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in

---

to his wife mentioning "saggy boobs," using swear words, laughing with Lehmann about a picture depicting a nudist colony, accepting a $600 loan from Lehmann, once hugging Lehmann, and failing to complain promptly about Lehmann's alleged inappropriate conduct.  But while these facts may be sufficient for the jury to conclude that Lehmann's conduct was welcome, they do not make the contrary conclusion unreasonable.

benefits." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998).  Defendants further assert that they acted with reasonable care and that Zamora was unreasonable in refusing their corrective plan.

In response, Zamora contends that she suffered two tangible adverse employment actions: (1) reduction of overtime and (2) a proposed package of unfavorable job changes if she continued to insist on separation from Lehman.  As to the overtime, on September 27, 2004, Koewler told Zamora that her overtime hours would be cut because the expansion project was finished.  He also told her that the decision to cut her hours had been Lehmann's.  Zamora avers that most of her overtime hours before September 27 had been spent in connection with tasks unrelated to the expansion project.  She contends that the decision to cut her overtime was retaliatory.  As to the package of unfavorable job changes, Zamora contends that SRC's proposed "solution" to Lehman's improper conduct was to offer her a demotion and a less desirable shift.

Zamora has presented sufficient evidence to permit reasonable jurors to conclude that Koewler's decision to take away Zamora's overtime was retaliatory.  If it was, it qualifies as a tangible employment action under <u>Ellerth</u>, and SRC's <u>Farragher</u> defense would fail.  As to the changed work schedule offered to keep Zamora and Lehman apart, plaintiff

presents sufficient evidence from which a jury could find either an adverse employment action or that Zamora acted reasonably in rejecting the corrective proposal.

Finally, Zamora contends that after she complained, SRC forced her to continue spending time with her alleged harasser every day, sometimes alone.  A reasonable jury might find SRC's corrective response inadequate.

For these reasons, SRC cannot establish a <u>Farragher</u> defense on summary judgment.  Accordingly, summary judgment for defendants on claims one and two is DENIED.

### III.  Claim No. 3: Failure to Prevent under FEHA

Zamora claims that SRC and Koewler violated FEHA by failing "to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov. Code § 12940(k).  Although SRC did have a formal anti-sexual harassment policy in place, Zamora contends that SRC and Koewler did not take adequate steps to prevent further harassment once she complained.  She says that she signed the statement absolving SRC only because she felt compelled to do so and not because she agreed with the contents.  For the reasons discussed in the preceding section, there are sufficient facts alleged calling into question whether SRC adequately prevented further harassment after Zamora's first complaint.  Accordingly, summary judgment for SRC on the third claim is DENIED.

However, defendants correctly assert that a supervisory employee is not liable under FEHA for failing to prevent harassment by a subordinate employee.  Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1326 (1996).  Therefore, summary judgment is GRANTED to Koewler on Zamora's third claim for relief.

### IV.   Claim No. 4: Wrongful Discharge (Harassment)

Zamora claims that she was constructively discharged in violation of the public policy that favors reporting sexual harassment.  To prevail, she must prove that she was constructively discharged in violation of a public policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision.  Turner v. Anheuser-Busch, Inc., 7 Cal 4th 1238, 1256 (1994) (citations omitted).

"Constructive discharge occurs when the employer's conduct effectively forces an employee to resign."  Id. at 1244.  The plaintiff must prove that "under all the circumstances, the working conditions are so unusually adverse that a reasonable employee in plaintiff's position would have felt compelled to resign."  Id. at 1247.  Zamora alleges that SRC constructively discharged her by taking inadequate steps to prevent Lehmann from continuing to harass her.  Moreover, Zamora contends that SRC's offer to have her report to Ramirez would have required her to work a less desirable shift and accept a position with

12

less responsibility.  She also claims that SRC's proposal would not have protected her adequately from further encounters with Lehmann.  There is an adequate factual basis for Zamora's contention that she was constructively discharged such that this issue cannot be resolved on summary judgment.

Zamora also must prove that she was discharged in violation of a "firmly established, fundamental, and substantial" public policy.  Foley v. Interactive Data Corp., 254 Cal. 3d 654, 671 n.11 (1988) (citations and internal quotation marks omitted). Antidiscrimination laws such as FEHA unquestionably satisfy this requirement.  See Cal. Gov. Code § 12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination on account of . . . sex.").  Discharging an employee in retaliation for reporting sexual harassment violates California public policy.  Barton v. New United Motor Mfg., Inc., 43 Cal. App. 4th 1200, 1208-09 (1996).

Finally, defendants contend that Zamora has failed to show that she left her job as a result of the alleged harassment. Rather, they assert, she left because SRC refused her lawyer's demand for $175,000.  This is a jury question.

For these reasons, summary judgment for defendants on the fourth claim is DENIED.

V.   Claim Nos. 5 & 6: Negligent Supervision and Management

Zamora brings claims against SRC and Koewler for negligent hiring, supervision, training, and retention of Lehmann, and for breaching its duty "to manage its facilities in a lawful manner and to refrain [sic] its employees and supervisors from committing . . . sexual harassment."

Workers' compensation law bars negligence claims by employees against their employers.  See Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co., 14 Cal. App. 4th 1595, 1605-06 (1993). Zamora asserts that her claims are not barred by workers' compensation exclusivity because defendants' misconduct was intentional and against public policy.  There is indeed an exception to workers' compensation exclusivity for intentional employer misconduct.  See Vuillemainroy v. American Rock & Asphalt, Inc., 70 Cal. App. 4th 1280, 1284 (1999).  But Zamora's claims are for negligence, which, by definition, is not intentional.  Thus, these claims do not fall within the exception.  See Coit Drapery, 14 Cal. App. 4th at 1606 (stating that workers' compensation laws would bar negligent supervision claim by harassed employee).  Accordingly, summary judgment for defendants on Zamora's fifth and sixth claims is GRANTED.

VI.   Claims 7 & 8: Assault and Battery

Zamora claims that Lehmann and Koewler assaulted and battered her.  "In order to state a cause of action for assault a

14

plaintiff must establish (1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact.  Brooks v. United States, 29 F.Supp.2d 613, 617 (N.D. Cal. 1998) (citing Restatement (Second) of Torts § 21).  "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  Restatement (Second) of Torts § 13.

As to Koewler, Zamora alleges that he put her in apprehension of harmful or offensive contact during their November 4, 2004 meeting.  However, the alleged facts are not a sufficient basis from which a reasonable jury could find Koewler liable for assault.  Getting angry and yelling at an employee may be rude and upsetting, but it is not assault.  "Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person."  Restatement (Second) of Torts § 31; see Brooks v. United States, 29 F.Supp.2d 613, 617 (N.D. Cal. 1998) ("Assault is a tort of specific intent; a plaintiff must prove that defendant intended to place plaintiff in a reasonable

apprehension of harmful or offensive contact."). There is no showing here that Koewler placed Zamora in reasonable apprehension of "imminent" physical contact, or that he intended to do so. Although he allegedly got angry, raised his voice, dropped a file on his desk and pointed his finger, he never raised a hand as if to strike nor did he use threatening language. If the alleged facts here amount to assault, then any angry confrontation between two people becomes an assault. This is not the law. See Restatement (Second) of Torts § 31. Further without contact, there can be no battery. The court therefore GRANTS summary judgment for Koewler on the seventh and eighth claims.

Zamora's assault and battery claims against Lehmann are another matter. Zamora alleges that Lehmann repeatedly touched her in an offensive manner. Accepting these allegations as true, a reasonable jury could find that Lehmann assaulted and battered Zamora. Accordingly, summary judgment for Lehmann on claims seven and eight is DENIED.

Finally, defendants provide no support for their assertion that SRC may not be held vicariously liable for Lehmann's intentional torts. Thus, summary judgment for SRC on the seventh and eighth claims is DENIED.

### VII.   Claim 9: Ralph Act

Zamora claims that defendants violated the Ralph Act, which prohibits "violence, or intimidation by threat of violence . . . on account of . . . sex."  Cal. Civ. Code §§ 51.7, 51(b).

It takes actual violence or the threat of violence to state a claim under the Ralph Act.  _Winarto v. Toshiba America Elec. Components, Inc._, 274 F.3d 1276, 1289 (9th Cir. 2001).  Zamora alleges that Lehmann intimidated her by implicitly threatening violence when he allegedly attempted to kiss her and then to block her from exiting the room.  She alleges that when he blocked her way, she was afraid Lehmann was going to hurt her physically.

Under _Winarto_, the question is whether "a reasonable person, standing in the shoes of the plaintiff, [would] have been intimidated by the actions of the defendant and perceived a threat of violence." _Id._ (citation omitted)  More specifically, the question is whether a reasonable woman in Zamora's position would have been intimidated and perceived a threat of violence. _Id._ (citation omitted).

Zamora's allegations against Lehmann suffice to create a triable issue as to whether a reasonable woman in her position would have perceived a threat of violence when Lehmann allegedly barred the trailer door with his arm.  In her deposition, Zamora states that she had no difficulty moving past Lehmann's arm,

17

that he did not make any further attempt to detain her, that he did not touch her as she left, and that he did not follow or chase her.  She also states that Lehmann never verbally threatened her.  Nevertheless, the gesture of blocking someone's exit might reasonably be perceived as a threat of violence.  The court cannot conclude as a matter of law that a reasonable woman would not perceive a threat of violence in Lehmann's alleged conduct.  This is a question for the jury.  Accordingly, summary judgment for Lehmann and SRC on the ninth claim is DENIED.[5]

Zamora's Ralph Act claim does not specifically mention Koewler or specify how his alleged conduct violated the Ralph Act.  Nor does plaintiff's opposition to the instant motion discuss a Ralph Act claim against Koewler.  Nevertheless, the complaint states that the Ralph Act claim is brought against all defendants.

The only allegations against Koewler that possibly could implicate the Ralph Act concern his alleged conduct at the November 4, 2004 meeting with Zamora.  For the same reasons discussed above in the assault context, however, a reasonable woman in Zamora's position would not have interpreted Koewler's

---

[5] Because there is a triable issue as to whether Lehmann intimidated Zamora by threat of violence, the court does not consider whether any of Lehmann's alleged unwelcome touchings constituted "violence" within the meaning of the Ralph Act.

alleged conduct as threatening violence.  Accordingly, summary judgment is GRANTED on Zamora's Ralph Act claim against Koewler.

## VIII.  Claim 10: Violation of the Bane Act

Zamora alleges that Koewler's conduct at the November 4, 2004 meeting violated the Bane Act, which creates a cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1.  Specifically, she alleges that "Koewler, by his intimidation of Plaintiff through the threat of physical violence, interfered or attempted to interfere with Plaintiff's exercise or enjoyment of her right to be free from sexual harassment and retaliation."

Zamora has not presented evidence that Koewler threatened or coerced her.  It is a somewhat closer question as to whether Koewler's conduct could be deemed intimidation.[6]  But Zamora has not presented any evidence that Koewler's intimidation, if any, deprived her or was intended to deprive her of any legal right.

---

[6] "There is no definitive definition of the word 'intimidation' in California law.  In common parlance, 'intimidation' means 'to make timid or fearful.'"  Harold E. Kahn & Robert D. Links, California Civil Practice Civil Rights Litigation § 3:19 (2006) (quoting Ex parte Bell, 19 Cal. 2d 488, 526 (1942)).

See <u>Jones v. Kmart Corp.</u>, 17 Cal. 4th 329, 334 (1998) (stating

that Bane Act violation requires "attempted or completed act of

interference with a legal right, accompanied by a form of

coercion."). Zamora does not allege that Koewler indimidated

her into performing or not performing any particular action.

Any intimidation Koewler's anger might have caused could not

have prevented Zamora from making a report of alleged wrongdoing

she had already made. Nor is there evidence that Koewler's

anger had anything to do with Zamora's sexual harassment

allegations against Lehmann, or that it was intended to or did

prevent future complaints. In short, Zamora has failed to

present any evidence that Koewler's alleged display of anger

interfered with her legal rights. Accordingly, summary judgment

for Koewler is GRANTED on the tenth claim.

On the other hand, as already discussed, a triable issue

exists as to whether Lehmann intimidated Zamora when he

allegedly moved to block her exit. A jury might find that

Lehmann intimidated Zamora in an effort to interfere with her

right to work in an environment free of discrimination based on

sex. Accordingly, summary judgment for Lehmann and SRC is

DENIED as to the tenth claim.

## IX.  Claim 11: Wrongful Discharge (Wastewater)

Zamora claims that SRC wrongfully discharged her because

she told the Water Board that SRC was not properly reporting its

wastewater flow numbers.  Zamora alleges that she informed the authorities of her suspicions regarding SRC's wastewater reporting on November 4, 2004 – the last day she worked at SRC – and that this was the reason Koewler became angry with her that day.  As already discussed, Zamora has alleged facts from which a reasonable jury might find that she was constructively discharged.  A reasonable jury also might find that SRC constructively discharged her in retaliation for taking her concerns to the authorities.  Accordingly, summary judgment is DENIED on Zamora's eleventh claim.

## X. Claim 12: Constructive Discharge

Zamora brings a claim for constructive discharge. Constructive discharge is not itself a cause of action under California law.  See Turner, 7 Cal. 4th at 1251 ("Even after establishing *constructive* discharge, an employee must independently prove a breach of contract or tort in connection with employment termination in order to obtain damages for *wrongful discharge*.") (emphasis original and citation omitted). Accordingly, summary judgment is GRANTED to SRC on the twelfth claim.

## XI.  Punitive Damages

Zamora seeks punitive damages against all defendants.  To recover punitive damages, Zamora must establish oppression,

fraud or malice by clear and convincing evidence.  See Cal. Civ. Code § 3294(a).

Zamora persuasively argues that reasonable jurors could find by clear and convincing evidence that Lehmann's alleged conduct was oppressive or malicious.  Accordingly, summary judgment on punitive damages against Lehmann is DENIED.

On the other hand, Zamora has failed to allege facts from which reasonable jurors could be clearly convinced that Koewler or SRC ratified Lehmann's alleged sexual harassment.  Punitive damages may be awarded against a corporate employer based on the conduct of an employee only if it had "advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct."  Cal. Civ. Code § 3294; see also Coll. Hosp., Inc. v. Superior Court, 8 Cal. 4th 704, 724 n.11 (1994) ("Punitive damages are not assessed against employers on a pure respondeat superior basis.  Some evidence of fault by the employer itself is also required.").  Even if Koewler and SRC failed to respond adequately to Zamora's allegations against Lehmann, Zamora's allegations do not support the conclusion that Koewler or SRC "authorized" or "ratified" Lehmann's alleged harassment.  Accordingly, the court GRANTS the motion for summary judgment with respect to punitive damages against Koewler and SRC.

CONCLUSION

As discussed above, defendants' motion for summary judgment is DENIED on claims one and two; DENIED as to SRC and GRANTED as to Koewler on claim three; DENIED on claim four; GRANTED on claims five and six; GRANTED as to Koewler and DENIED as to Lehmann and SRC on claims seven and eight; GRANTED as to Koewler and DENIED as to Lehmann and SRC on claim nine; GRANTED as to Koewler and DENIED as to Lehmann and SRC on claim ten; DENIED as to claim eleven; GRANTED on claim twelve; DENIED as to punitive damages for Lehmann and GRANTED as to punitive damages for Koewler and SRC.

IT IS SO ORDERED.

Dated:  1/16/2007

_____
DAVID F. LEVI
United States District Judge